RALPH M. THOMISON, APPELLEE, V. CARL A. BUEHLER,
APPELLANT.

25 N. W. 2d 391

FILED DECEMBER 29, 1946. No. 32143.

*Mothersead & Wright* and *Lewis F. Shull*, for appellant.
*Lyle Q. Hills* and *Willard F. McGriff*, for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL,
and WENKE, JJ., and WILSON, District Judge.

CARTER, J.

The plaintiff sued to recover damages for personal injuries received when struck by defendant's automobile on a public highway. The jury returned a verdict for $10,500. Judgment was entered thereon and the defendant appeals.

The case was submitted to the jury upon the issue of defendant's negligence and the contributory negligence of the plaintiff. The only error assigned is the failure of the court to sustain defendant's motion for a directed verdict for the reason that plaintiff's contributory negligence was such as to defeat a recovery as a matter of law.

The plaintiff, on September 28, 1943, the date of the accident, was an employee of the Gering Ft. Laramie Irrigation District. On that date, while working at his employment in and around a drag line dredge which was being transported on a state highway at a point about three miles south of Gering, Nebraska, plaintiff was struck by defendant's automobile and seriously injured.

It appears from the record that plaintiff was assisting in the transporting of the drag line dredge from Lyman, Nebraska to a point four miles south and a mile west of Gering. The dredge was being hauled on a large semi-trailer having

a large flat bed approximately eight feet wide and 24 feet long. A boom, which handled the cables and controlled the bucket used for excavating, extended 40 or 45 feet in front of the cab of the dredge. The dredge sat on the truck on its own tracks with the boom lowered as much as possible to avoid wires or other objects with which it might come in contact. The boom extended five or six feet in front of the truck cab. At its highest point it was 12 or 15 feet above the paved highway. The pavement at the point of the accident was a black-top, oil mat about 27 feet wide, with a white center line. Both the plaintiff and the defendant were familiar with the highway at the point of the accident.

Plaintiff's evidence is that at about eight p. m. of the day in question he was riding along the highway in a pick-up truck, watching for wires over the highway that might not clear the dredge. As he approached the scene of the accident he observed some wires that appeared of doubtful height to clear it. He signaled the driver of the truck to stop as he aproached the wires. Plaintiff then climbed up on the cab of the truck and with a lath lifted the wires over the front end of the boom. The truck moved up slowly and defendant again lifted the wires over an arch farther along the boom. Plaintiff then stepped down on the platform of the truck. Observing no vehicles approaching from the south, he returned to the pavement by stepping on the hub of one of the trailer wheels. After he stepped to the pavement he backed up to the south and east, motioning the truck driver to advance, and watching to see if the wires cleared the cab of the dredge. As he was thus proceeding, facing in a northwesterly direction, he was struck by defendant's car coming from the south. Plaintiff testifies that he was in about the center of the highway when struck. After the accident he was found lying on the center line of the highway, or slightly west thereof.

The accident happened at or immediately after dusk. The headlights on the truck were lighted. The truck had many clearance reflectors in addition to a large flood light,

which plaintiff claims lighted up the scene of the accident. The evidence is in conflict as to whether the flood light was pointed north or south, and some of the witnesses could not recall whether it was lighted or not. Plaintiff and other witnesses testify, however, to their ability to see the wires above the highway, as well as the whole scene of the accident. Plaintiff's helper, at the time the wires were discovered, proceeded south on the highway with a red flag to warn approaching traffic. As plaintiff climbed down from the truck, the helper started back to the truck and was standing just in front of it when defendant's car passed him and struck the plaintiff. He did not see the car until it was even with him, and plaintiff did not see it at all.

The defendant testifies that he left his home south of the scene of the accident shortly before eight p. m., to go to Scottsbluff. He says he was traveling at 30 or 35 miles per hour as he approached the scene of the accident. He saw the headlights of the truck and did not know that it was other than an ordinary truck or automobile traveling toward him. He testifies that he saw plaintiff first when he was 25 or 30 yards from him, although in another part of his testimony he estimates the distance at 10 or 15 yards. Defendant testifies that he could see about 40 to 50 feet ahead of his car when his lights were on dim. He says it would take him from 30 to 40 yards to stop at the rate he was traveling. There were tire marks on the pavement, made by defendant's car, which were 71 or 72 feet in length. He says that plaintiff suddenly backed out in front of his car to a point three or four feet east of the center line and that he was unable to stop or turn out to avoid striking him. He says that he did not sound his horn, but that he immediately applied his brakes to the maximum. He testifies that the application of the brakes forced him forward into a position that prevented him from sounding the horn. Defendant testifies that he did not see the flood light. He says that plaintiff suddenly and unexpectedly backed into his line of travel and that he was unable to figure out;

why he did not get out of the way. He did not see plaintiff until he was even with the headlights on the truck. He did not observe plaintiff's helper with the warning flag, nor did he see the lath with the red cloth tied to it in the hands of the plaintiff.

It is the rule in this state that, where different minds may draw different conclusions from the evidence in regard to negligence, the question should be submitted to the jury. But when the evidence shows beyond reasonable dispute that the plaintiff's negligence is more than slight as compared with the defendant's negligence, then it is proper for the trial court to instruct the jury to return a verdict for the defendant. Whittaker v. Hanifin, 138 Neb. 18, 291 N. W. 723; Halliday v. Raymond, ante p. 179, 22 N. W. 2d 614.

We think there is sufficient evidence in the record which, if believed, would constitute negligence on the part of the defendant. The defendant approached the scene of the accident at a rate of speed of 30 to 35 miles per hour. He saw the plaintiff backing toward him when he was 40 or 50 feet from him. He knew that plaintiff was oblivious to his approach, because plaintiff was looking in the opposite direction. He failed to give notice of his approach by sounding his horn. He says plaintiff was three or four feet east of the center line, and defendant failed to turn to the right to avoid the accident when a turn of two feet would have avoided it. The record shows by the tire markings on the pavement that he drove straight north, the tire burn being about three feet east of the center line and extending for a distance of 70 feet or more. Defendant failed to see plaintiff's helper standing in front of the truck in the light of its headlights, holding a red warning flag. He says he was unable to see in and around the truck until he was even with its headlights, yet the plaintiff and others present were able to see the wires extending over the highway. Whether plaintiff backed suddenly into defendant's path, or whether he was backing longitudinally along the pavement during all of the times testified to, is a disputed question of fact.

We think there is ample evidence from which the jury could find that the defendant was negligent.

The defendant contends that plaintiff's negligence was more than slight when compared with that of the defendant as a matter of law. In this respect the record shows that plaintiff, after lifting the wires over the boom, returned to the platform of the truck. From there he says he looked to the south and saw no cars approaching. He then stepped to the pavement and, while discussing the situation with the truck driver, again looked south and observed no vehicles aproaching. He then backed to the south, motioning to the truck driver to advance while he observed the clearance of the cab on the dredge and the wires overhead. His interest was centered on the wires and the possibility of contact with some part of the dredge at the time he was struck. He knew also that a flagman was to the south to warn approaching traffic of the possibility of danger. Plaintiff testifies that he was not certain of his exact position with reference to the center of the highway, but he thought he was near the center. We do not think this evidence shows that plaintiff's negligence was more than slight when compared with that of the defendant as a matter of law. Under such circumstances, the question of the negligence of the parties, and the degree thereof when compared one with the other, is for the jury.

In determining whether plaintiff was guilty of such contributory negligence as would defeat a recovery as a matter of law, the jury is entitled to consider all the facts and circumstances with reference thereto. There is evidence that plaintiff was so absorbed in his work that he became oblivious to the approach of traffic. This the jury may properly consider in determining the degree of his contributory negligence. In Ebel v. Bruzewski, 296 Mich. 654, 296 N. W. 715, the court held that evidence that a plaintiff who was struck by an automobile while standing in the traveled portion of an icy street at night while his attention was distracted from the peril of his position by a police officer en-

gaged in questioning him regarding an automobile collision which had just occurred was sufficient to sustain a finding that there was no contributory negligence. In Daughtry v. Cline, 224 N. C. 381, 30 S. E. 2d 322, it was held that plaintiff, a civil engineer who became absorbed in his duties of inspecting a road grade and did not see a truck which backed over him, was not guilty of contributory negligence as a matter of law.

We do not think the fact that plaintiff became so absorbed in his work as to detract him from his perilous position is a defense to a charge of contributory negligence, but it is a fact which, if established, the jury could consider along with all the other evidence and circumstances in determining whether plaintiff was guilty of such contributory negligence as to bar a recovery.

There is evidence in the record which, if found by the jury to be true, would warrant a finding that the plaintiff was guilty of contributory negligence which was more than slight when compared with the negligence of the defendant. But the evidence of contributory negligence is not such that we can say as a matter of law that it would defeat a recovery. Under such circumstances the rule to be applied is: In a jury case where different minds may reasonably draw different conclusions or inferences from the adduced evidence, or if there is a conflict in the evidence, as to whether or not they establish negligence or contributory negligence, and the degree thereof when one is compared with the other, such issues must be submitted to a jury. Fulcher v. Ike, 142 Neb. 418, 6 N. W. 2d 610; Miers v. McMaken, ante p. 133, 22 N. W. 2d 422. We think the trial court was correct in submitting the case to the jury on the above theory.

AFFIRMED.