### UNION PAC. R. CO. v. DENVER–CHICAGO TRUCKING CO., Inc.

No. 14643.

United States Court of Appeals
Eighth Circuit.

Feb. 20, 1953.

J. H. Anderson, Lincoln, Neb. (C. B. Matthai, G. C. Holdrege and A. W. Scribner, Omaha, Neb., on the brief), for appellant.

Robert H. Beatty, North Platte, Neb. (Rush C. Clarke, Milton C. Murphy and Earl E. Morgan, North Platte, Neb., on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and COLLET, Circuit Judges.

COLLET, Circuit Judge.

Plaintiff-appellee, a Nebraska corporation, obtained a verdict from a jury, upon which a judgment against defendant railroad company was entered, awarding plaintiff damages for injuries to its semi-trailer truck and cargo caused by a collision between the truck and defendant's switch engine at 2:00 a. m., August 15, 1948, at the grade crossing of defendant's switch track and transcontinental United States Highway 30 at the outskirts of the town of Cozad, Nebraska. The assignments of error are (1) that the evidence established plaintiff's contributory negligence in such degree that plaintiff was not entitled to recover as a matter of law, and (2) that "The verdict of the jury was contrary to law." The substantive law of Nebraska must be applied.

Nebraska observes the comparative negligence doctrine in determining whether a plaintiff, guilty of contributory

negligence, may recover. The Nebraska rule is enunciated by statute as follows:

"25–1151. Actions for injuries to person or property; contributory negligence; comparative negligence. In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury."

Sec. 25–1151, Revised Statutes of Nebraska, 1943, Reissue of 1948, Vol. II, p. 469.

The judicial construction of the statute by the Supreme Court of Nebraska is expressed in Mundt v. Chicago, R. I. & P. R. Co., 136 Neb. 478, 286 N.W. 691, 694, as follows:

"if plaintiff is guilty of negligence directly contributing to the injury, he cannot recover, even though defendant was negligent, unless the contributory negligence of plaintiff was slight, and the negligence of defendant was gross in comparison therewith. If, in comparing the negligence of the parties, the contributory negligence of the plaintiff is found to exceed in any degree that which under the circumstances amounts to slight negligence, or if the negligence of defendant falls in any degree short of gross negligence under the circumstances, then the contributory negligence of plaintiff, however slight, will defeat a recovery."

Plaintiff's truck was on a regular run between Blair and Cozad, Nebraska, on United States Highway 30. The highway at the point of collision is level and runs in a northwesterly and southeasterly direction. The truck was going northwest. The defendant's spur track runs northeasterly from defendant's main line approximately a mile to an industrial plant. It crosses the highway about 800 or 900 feet northeast of the point where it leaves the main line at an angle of about 45 degrees. The crossing is at grade and is only a few feet west of the east city limits of the City of Cozad. The spur track is used but little, there being only about 12 train movements a week over it.

Robert Warne was the driver of the truck. He was an experienced driver and perfectly familiar with the highway and the fact that the defendant's spur track crossed it at the point of the accident. Viewing all of the evidence in the light most favorable to the conclusion the jury reached, as we must do in testing the sufficiency of the evidence to support the verdict, the following situation was presented by the evidence.

The tractor and trailer were about 48 feet long and together with the freight on the trailer weighed approximately 50,000 pounds. It was traveling about 45 to 50 miles per hour when it passed a "Congested Area" sign 1100 feet east of the crossing, and a "Speed Limit 35 Miles Per Hour" sign 1000 feet east of the crossing. About one-quarter of a mile east of the railroad crossing Warne dimmed the lights on the truck for an oncoming automobile which he later met about 650 feet east of the crossing. After passing this car, knowing that he was approaching the city limits of Cozad, he did not turn the lights back on the bright beam or apply power, but permitted the truck to gradually slow down by coasting without power. When he was about 200 feet east of the crossing he noticed a light that appeared to be a bicycle light or something of that kind. He immediately turned his lights on bright and then saw that the light was a lantern in the hands of a man on the concrete roadway at the crossing. He also saw defendant's switch engine which was backing and was just starting across the pavement from the south, moving very slowly. During the time he turned his lights on bright and saw the man on the crossing with the lantern, the truck was moving forward so that when he first saw the engine he was about 150

feet from the crossing. He thought the engine was going to stop but nevertheless applied his brakes hard. There was a short interval before the brakes took hold. When they took hold the driver estimated his speed at about 35 or 40 miles per hour. Although there were skid marks on the pavement for a distance of 80 feet from the crossing, Warne was unable to stop before he got to the crossing. The switch engine continued on across the pavement at about 2 miles per hour. When Warne got within about 20 feet from the crossing, he realized that the engine was going to continue on across the highway. He then swerved to the right, but the engine struck the tractor on its left side about halfway back from the front end. The truck was then moving about 25 to 30 miles per hour. It was pushed to the right (north) about a foot by the impact but continued on without turning over. The left side of the tractor and trailer was sideswiped by the rear end of the switch engine, causing the damage to the equipment and the cargo which constituted the basis of the judgment. Warne testified that there was no light on the rear of the engine before the collision and there was no bell rung or whistle blown. The situation presented by defendant's evidence, insofar as it aids plaintiff, is as follows.

On the night of the accident the switch engine in charge of its crew left the main line, dropping the conductor off at that point, then backed up to a point approximately 30 feet south of the paved portion of the highway. It stopped there and the brakeman got off the egine and walked over to the north or westbound lane of the pavement with his lantern to flag highway traffic and direct the engineer and fireman, who remained in the engine cab, when to move the engine across the highway. He let an eastbound car go by (the car for which Warne dimmed his lights) and then looking eastward he saw plaintiff's truck approaching 700 to 800 feet east of the crossing, at a speed estimated at 45 to 50 miles per hour. He signalled with his electric lantern for it to stop, but the truck came on with undiminished speed without indication that the driver had observed his signal. But without waiting to see if the truck was going to stop he gave the engineer the signal to proceed across the highway. If the truck driver had been looking and listening for a train on the spur track and had seen the engine and a light on it, the engine would have appeared to be, as it was, standing still and harmless. The engine started up, pursuant to the brakeman's signal, and proceeded at a speed of about 2 or 3 miles per hour across the highway. When the truck was about 60 or 70 feet from the crossing, the brakeman saw that the truck was not slowing down particularly (as he expresses it) and that there was certain to be a collision. Then, when a collision was inevitable, he gave the engineer a stop signal. The engine was stopped as quickly as possible by the engineer but the rear end of the tender of the engine was across the center line of the pavement and although the truck swerved to the right away from the engine, the collision resulted.

■ Defendant contends that these facts did not warrant or support a conclusion that defendant was guilty of gross negligence. It is not for us to fix the degree of negligence. That was the province of the jury. It is only for us to say whether there was competent evidence to support the jury's verdict. As this court said in Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 436:

"The only question with which this court is concerned is whether the verdicts of the jury were sustained by any substantial evidence."

■ While the evidence did not require the conclusion that defendant was grossly negligent, it did adequately support such a finding. Suppose that the situation of the parties had been reversed, with the truck stopped 30 feet from defendant's rails. The driver of the truck had sent forward a man to see if a train was coming. This man had a small electric lantern. He saw a train approaching about 800 feet away, traveling 45 to 50 miles per hour, giving no indication of stopping or slowing down. He waved his lantern at the train to stop, but there was no indication that his signal was seen, understood or heeded. The train kept on at undiminished speed. But the

signalman gave the signal to the driver of the truck to come on across, and although it proceeded at a speed of only 2 or 3 miles per hour, was not signalled to stop until the train was 60 or 70 feet away and it was obvious that a collision was inevitable. Could it be said that fair-minded men could not reasonably reach the conclusion that such conduct was grossly negligent? The illustration demonstrates the answer.

But although the evidence is sufficient to support a finding by the jury that defendant was grossly negligent, defendant insists that plaintiff was negligent in a degree more than slight in comparison with defendant's negligence and hence may not recover under the law of Nebraska.

In addition to the facts heretofore stated, it was established beyond dispute that Warne knew of the congested road district sign 1100 feet east of the crossing, knew of the 35 mile speed limit sign 1000 feet east of the crossing, of the railroad warning sign 650 feet east of the crossing and the railroad crossing sign 100 feet east of the crossing, and that he either saw them or should have seen them on the night of the accident. According to Warne's testimony he had the headlights of the truck on dim from the time he dimmed them before meeting the car approximately 650 feet east of the crossing until he was about 200 feet from the crossing. That the extent of his vision with the lights on bright was 300 feet and when dimmned was 75 to 100 feet. That at the speed he was traveling when he dimmed the lights he could have stopped in 300 feet. At the time he turned the lights on bright at 200 feet from the crossing and started to apply the brakes, he was traveling about 35 or 40 miles per hour. That at 35 miles per hour it would take him 250 feet to stop (including reaction time). Therefore, during the time the lights were dimmed the truck could not have been stopped within the range of vision, and when the lights were turned on bright 200 feet east of the crossing and the brakeman and the switch engine were brought into Warne's vision, the truck could not have been stopped before it reached the crossing, the location of which the driver knew. By ordinance the speed limit on United States Highway 30 within the corporate limits of Cozad was 35 miles per hour. By statute it was the duty of the truck driver when approaching the railroad crossing to look and listen for the approach of trains.

In passing on the degree of plaintiff's negligence, the Nebraska law must be applied. And if the extent of the plaintiff's negligence is more than slight, there may be no recovery. But the plaintiff's negligence is not to be evaluated as slight, or otherwise, standing alone. The criterion by which the degree of negligence is to be measured is the extent thereof by comparison with defendant's negligence. That the defendant was grossly negligent there can be no doubt. By comparison therewith, was plaintiff more than slightly negligent? The truck driver did not see the switch engine. It was his positive duty in approaching the railroad crossing to look and listen at a time and place where looking and listening would be effective, and the failure to observe that rule without reasonable excuse therefor is negligence. Mundt v. Chicago, R. I. & P. Ry. Co., 136 Neb. 478, 286 N.W. 691; Tynon v. Missouri Pac. R. Co., 101 Neb. 810, 165 N.W. 148. Numerous instances have arisen when a failure to look and listen has been without excuse and recovery barred. Illustrative of cases of that kind are Eggeling v. Chicago, R. I. & P. Ry. Co., 119 Neb. 229, 228 N.W. 361; Gordon Fireproof Warehouse & Van Co. v. Hines, 8 Cir., 272 F. 604; Bradley v. Missouri Pac. R. Co., 8 Cir., 288 F. 484. But the attention which one must pay to his surroundings is not a legal absolute and varies with the circumstances of the individual case. Thomison v. Buehler, 147 Neb. 811, 25 N.W.2d 391; Frazier v. Anderson, 143 Neb. 905, 11 N.W.2d 764.

It is also correct that one who drives so fast at night that he cannot stop in time to avoid a collision with objects within the area lighted by his headlights is negligent as a matter of law. Fischer v. Megan, 138 Neb. 420, 293 N.W. 287. And it is further the law in Nebraska that the proof of violation of a statute or an ordinance is but evidence of negligence and does not

establish negligence as a matter of law. Eggeling v. Chicago, R. I. & P. Ry. Co., 119 Neb. 229, 228 N.W. 361; Plumb v. Burnham, 151 Neb. 129, 36 N.W.2d 612. Nor is mere familiarity with existing physical conditions alone sufficient to make one guilty of contributory negligence. Surface v. Safeway Stores, 8 Cir., 169 F.2d 937.

It is contended that the facts demonstrate plaintiff's comparative negligence to such an extent as to bar its recovery as a matter of law under the foregoing rules of Nebraska law. As to the charge that plaintiff's driver was negligent in operating the truck at an excessive rate of speed, the proof does not necessarily support the charge that the truck was violating the statutory rate of speed. Nor does it necessarily require a finding that the truck was exceeding the speed limit fixed by ordinance when it crossed the boundary of the city limits a few feet east of the crossing. Nor was the jury required under the evidence to find that under all the circumstances the rate of speed of the truck on this transcontinental highway, as fixed by the driver's testimony, was a negligent speed.

As to the charge that the truck driver was negligent as a matter of law in operating the truck so fast at night that he could not stop in time to avoid a collision with an object within the area of his headlights, it should be kept in mind that those headlights were dimmed, and properly so, as the truck met the automobile approximately 650 feet east of the crossing. He could not have seen the switch engine standing near the south right-of-way line of the highway at that time, if his headlights had been immediately switched back on the bright beam. Possibly he could have and should have seen the brakeman's lantern at that point. He did see that lantern when he was about 250 feet from the crossing. But when he did see it, it appeared to him as the light on a bicycle, and there does not appear to be anything in the record to justify the conclusive assumption that had he seen it 400 feet farther back it would have looked any more like a brakeman's lantern than it did at the point when he actually saw it. And so it does not appear that the jury's conclusion is wholly unreasonable and without support when it found, as it must have, that the driver was not negligent in not recognizing the brakeman's lantern as a warning signal. And if it may with propriety be said that the truck driver should have turned the headlights back on the bright beam immediately after he passed the oncoming automobile and thereby have been able to have observed the switch engine 300 feet away from the crossing, within which distance he says he could have stopped the truck, would the fact that he did not try to stop until he was approximately 200 feet east of the crossing have necessarily required a finding of more than slight negligence? The picture which he would have seen, had his lights been on bright, was of the engine either standing still or barely moving at the south right-of-way of the highway, with a man standing in the highway with a lantern in his hand, who we will assume should have been recognized by the driver as a signalman for the engine. The driver said that when he did turn the lights on bright and did see that situation, the engine was then moving very slowly and that he assumed that it would not deliberately continue on across the highway, blocking his path. The jury evidently concluded that was not an unreasonable assumption. The facts do not warrant us to hold to the contrary. The rule of law has no application when reasonable minds may differ on whether a motorist exercised the care, caution, and prudence required of him under the circumstances. Miers v. McMaken, 147 Neb. 133, 22 N.W.2d 422.

Was the truck driver guilty of such negligence in failing to keep the kind of a lookout that would have resulted in his seeing the engine at the roadside, even if the light on the engine had been burning, as the trainmen testified? The angle which the spur track on which the engine was standing bore to the highway was approximately 45 degrees, with the result that the beam of the light on the engine, if burning, would not have been directly toward the truck driver. Two other trains were standing on defendant's tracks to the south and west of the highway at the time.

The driver was entirely familiar with the surroundings. He knew of the spur track and the other tracks upon which the other trains were standing. Can it be said with certainty that the driver's negligence was more than slight in not assuming that the light he saw, or should have seen, if indeed it was burning, was the light of an engine on the spur track about to cross the highway, when, as the evidence indicates and the driver knew, movements on the spur track were very infrequent? Can it be said that the jury was wholly unwarranted in not convicting the driver of more than slight comparative negligence in not taking such precautions as to enable him to stop before he did? In the light of the declaration of the Nebraska Supreme Court that the attention which one must pay to his surroundings is not a legal absolute and varies with the circumstances, we should not and cannot hold that the jury's evaluation of the negligence of plaintiff's driver was wholly without foundation under the circumstances.

What we have said in our discussion of the charge that the driver was more than slightly negligent in failing to have the headlights on the bright beam and failing to observe the switch engine at a point 300 feet or more east of the crossing applies with equal force to the charge that he failed to see the headlight on the engine. We repeat that if he had seen it, the jury was not necessarily required under the facts to find him guilty of more than slight negligence in assuming that the engine would not proceed across the highway in his path.

■ If the various acts of commission and omission on the part of the truck driver were standing alone and not the subject of comparison with defendant's negligence, it might well be said that the combination of those acts constituted substantial negligence, more than slight. But as heretofore observed, they are not to be so considered. The plaintiff's negligence must be compared to that of the defendant. In doing so, the driver's negligence may be

slight as compared to the gross negligence of the defendant, whereas it would be more than slight if compared with slight or no negligence on the part of the defendant. Viewing the situation as the jury did, we are not entirely out of sympathy with the jury's conclusion that the truck driver's negligence was slight or less than slight compared with the negligence of the brakeman and the trainmen in deliberately causing the engine to be backed across the highway in the path of the truck approaching, as they said, at 45 or 50 miles an hour, giving no indication whatever that the driver had seen the engine or the signalman, and making no effort whatever to stop the engine until after a collision was inevitable. And so we reach the conclusion that the defendant's contention that the evidence requires a holding as a matter of law that the truck driver's negligence was more than slight in comparison with that of the defendant is untenable. Day v. Metropolitan Utilities District, 115 Neb. 711, 214 N.W. 647, 216 N.W. 556; Roby v. Auker, 149 Neb. 734, 32 N.W.2d 491; Miers v. McMaken, 147 Neb. 133, 22 N.W.2d 422. This case is not comparable to those wherein a train was standing across a highway crossing. Under some such circumstances there may be no escape from a finding that negligent speed or want of proper lookout was the dominant cause of the accident. See Lemke v. Chicago, R. I. & P. R. Co., 8 Cir., 195 F.2d 989.

■ Defendant's contention that the verdict of the jury was contrary to law cannot be sustained upon the record before us. The point is that the statute law of Nebraska requires the mitigation of damages, when there is contributory negligence on the part of a plaintiff, in proportion to such contributory negligence. And so it does. Sec. 25–1151 heretofore quoted. But the trial court instructed the jury that if its finding be for the plaintiff its verdict should be for the amount claimed.[1] The verdict was for that amount. There was no exception to this charge. It therefore became the law of the case whether correct

1. There was a modification of the charge submitting a question of fact relating to the amount of one item which is not now material.

or incorrect. And although the plaintiff-appellee, does not raise the question that defendant did not except to the charge, that is not necessary to our application of the rule that the law as stated by the trial court, unexcepted to, will be treated as the law of the case on appeal. At the request of the defendant the trial court gave an instruction which told the jury that under the law if plaintiff was guilty of contributory negligence, its recovery should be, as the statute requires, mitigated in proportion to the amount of contributory negligence attributable to plaintiff. This instruction was contradictory to the instruction above alluded to. But, again, there was no exception by defendant to the instructions in this respect. The defendant, not having excepted to the charge, is in no position to assert error on appeal for any imperfections therein.

The judgment is affirmed.